IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT OF COLUMBIA<br>Office of the General Counsel<br>51 N Street, N.E., 6th Floor<br>Washington, DC 20002,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL EMERGENCY<br>MANAGEMENT AGENCY<br>Serve: Office of General Counsel<br>       500 C Street S.W.<br>       Washington, DC 20472,<br><br>        Defendant. | CIVIL ACTION NO. |

## COMPLAINT and
## PETITION FOR DECLARATORY RELIEF

The plaintiff, the District of Columbia ("District"), by and through its undersigned counsel, alleges in support of its complaint and petition as follows:

### PARTIES

1. The District is a municipal corporation.

2. The Federal Emergency Management Agency ("FEMA") is an agency of the United States government.

### JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2) and other applicable provisions of law.

1

## VENUE

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e) and 42 U.S.C. § 4104 and other applicable provisions of law.

## FACTS

5. This action concerns a base flood elevation determination FEMA purports to have made for land located within the boundaries of the District.

6. In connection with its duties related to the National Flood Insurance Plan ("NFIP"), FEMA is charged by statute and regulations with developing and publishing Flood Insurance Rate Maps ("FIRMs") showing, among other things, areas that are likely to be flooded during a "100-year flood."

7. The 100-year flood, also referred to as a "base flood," is a theoretical flood of a scale that has a 1% chance of being equaled or exceeded in any given year.

8. Low and unprotected elevations that would be inundated by a base flood are referred to as Base Flood Elevations ("BFE").

9. Prior to the actions complained of herein, FEMA last issued FIRMs for the District prior to November 15, 1985.

10. At that time and since, the District has been largely protected from a 100-year flood by a series of levees that are in place or would be constructed in the event of threatened flooding.

11. FEMA issued a proposed rule reflecting a preliminary and approximate determination that a greater area of the District is prone to flooding during a 100-year flood than was previously reflected on the 1985 FIRMs, and that revised BFEs would be issued.

12. As a result of potential inaccuracies and significant data gaps in FEMA's preliminary and approximate determinations, as well as a joint recognition by the District, FEMA, and other federal entities such as the U.S. Department of Interior's National Park Service, of the significant potential impact on the National Mall and other District and Federal properties, there were extensive discussions between FEMA, the District, and others concerning these issues.

13. FEMA's preliminary and approximate determinations as to BFEs, if made final and reflected in FIRMs, would result in significant and costly regulations in accordance with the NFIP and could substantially impact numerous historic buildings, landmarks, and memorials in the District. All of these matters required consideration and review prior to issuance of revised FIRMs.

14. In response to a request from the District to extend the period for submission of appeals, comments, and protests, FEMA extended the period until March 26, 2008.

15. On March 7, 2008, the District timely filed an appeal of FEMA's proposed District BFEs by submitting voluminous and detailed comments to FEMA.

16. Without explanation and/or complying with the required appeal resolution process, on March 26, 2008, FEMA issued a Letter of Final Determination ("LOFD") reflecting revised BFEs.

17. On March 25, 2008, FEMA informed the District that it would issue the LOFD, but would continue to work with the District to avoid implementation of the modified BFEs.

18. If the LOFD is not rescinded or otherwise voided, the revised BFE would be reflected in FIRMs effective on or about September 26, 2008.

19. Without satisfying the statutorily required appeal resolution process related to the District's appeal filed on March 7, 2008, on April 17, 2008, FEMA published in the Federal Register its Final Rule of Final Flood Elevation Determinations for the District. It is this Final Rule which is challenged herein.

20. Following April 17, 2008, and despite the fact that it had issued a Final Rule in the Federal Register, FEMA continued to work with the District to reach an agreement allowing the District to study and improve the 17th Street levee and thereby avoid implementation of the revised BFE.

21. On April 25, 2008, the District sent a letter to FEMA documenting an agreement as to certain milestones designed to achieve necessary flood protection (the "Milestone Agreement"). A true and correct copy of the Milestone Agreement is attached as Exhibit "A." The Milestone Agreement also set forth a schedule of deliverables agreed to by the District and FEMA.

22. In a letter dated May 1, 2008, FEMA affirmed and ratified the Milestone Agreement. A true and correct copy of FEMA's May 1, 2008, letter is attached as Exhibit "B."

23. The deliverable scheduled for May 2008 in the Milestone Agreement was described as "Copy of Executed Contract for Levee Accreditation Alternatives." This executed contract was provided by the District to FEMA in a timely manner as required by the Milestone Agreement and therefore the May milestone was completed and satisfied.

24. The Milestone Agreement stated: "Upon completion of the May milestone, FEMA will rescind the March 25, 2008, Letter of Final Determination." However, FEMA has not yet issued written confirmation that the Letter of Final Determination is rescinded.

25. The District has complied with all requirements necessary to the bringing of this action, has complied with the Milestone Agreement, and has fulfilled all other conditions precedent, if any.

### COUNT I
### Declaratory Relief under 28 U.S.C. § 2201
### Violation of the Administrative Procedure Act, 5 U.S.C. § 551
### Violation of the Flood Disaster Protection Act, 42 U.S.C. § 4104

26. The District incorporates by reference the allegations contained in paragraphs 1 through 25.

27. On January 10, 2008, the District requested a 90 day extension to the period during which it could file comments constituting its appeal.

28. On January 11, 2008, FEMA granted the District's request by providing an extension for a period of 83 days, or until March 26, 2008.

29. On March 7, 2008, the District timely appealed FEMA's proposed flood elevation determinations and/or FIRMs with information indicating that FEMA's proposed flood elevation determinations and/or FIRMs contained factual, legal, and procedural infirmities.

30. In its appeal, the District identified information that would result in more correct estimates of base flood elevations and thus more accurate FIRMs. The District also noted that the proposed FIRMs were issued in a manner which did not comply with applicable law.

31. Without properly considering or ruling upon the District's appeal, on March 26, 2008, FEMA issued final flood elevation determination and FIRMs.

32. FEMA's decision to issue such final flood elevations and/or FIRMs without first addressing the information contained in the District's appeal was arbitrary and capricious,

unsupported by substantial evidence, contrary to law and otherwise an abuse of discretion.

## COUNT II
### Declaratory Relief under 28 U.S.C. § 2201
### Violation of the Administrative Procedure Act, 5 U.S.C. § 551

33. The District incorporates by reference the allegations contained in paragraphs 1 through 25.

34. FEMA's decision to issue its final flood determinations and/or FIRMs, without first addressing the information contained in the District's appeal and resolving the factual and legal infirmities, was arbitrary and capricious, contrary to law, unsupported by substantial evidence and otherwise an abuse of discretion.

## COUNT III
### Declaratory Relief under 22 U.S.C. § 28 U.S.C. § 2201
### Violation of the National Environmental Policy Act, 42 U.S.C. § 4321
### and Administrative Procedure Act, 5 U.S.C. § 551

35. The District incorporates by reference the allegations contained in paragraphs 1 through 25.

36. The National Environmental Policy Act ("NEPA") emphasizes the importance of comprehensive environmental analysis to ensure that federal agencies carefully examine the environmental consequences of their actions before they take such actions. The statute also ensures that the public is made aware of the environmental effects of the agencies' decisions, and is allowed to participate in the process of preparing environmental reviews.

37. NEPA is applicable to FEMA's actions complained of herein.

38. Under NEPA, an agency is required to prepare and circulate for review and comment an "environmental impact statement" ("EIS") before undertaking "legislation and other

6

major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). Depending on the action taken, NEPA may require other or different actions. For example, an agency may prepare an environmental assessment ("EA") to decide whether the environmental impact of a proposed action warrants the preparation of an EIS. An EA must provide sufficient evidence and analysis to determine whether an EIS or a finding of no significant impact ("FONSI") should be prepared. If an agency decides not to prepare an EIS, it must provide a convincing statement why a project's impacts are insignificant. If substantial questions are raised about whether a project may have a significant effect on the environment, an EIS must be prepared.

39. Under NEPA, major federal actions include actions that will have a significant impact on the environment, including those that will result in an "extensive change in land use," 44 C.F.R. § 10.8(b)(2)(i), a "land use change which is incompatible with the existing or planned use of the surrounding area," 44 C.F.R. § 10.8(b)(2)(ii), an impact that is likely to be controversial, 44 C.F.R. § 10.8(b)(2)(iv), and an effect on property listed on the National Register of Historic Places, 44 C.F.R. § 10.8(b)(2)(vii).

40. Even where an action is categorically excluded from NEPA compliance, an environmental assessment must be prepared in extraordinary circumstances, including, the "[p]resence of ... cultural, historical, or other protected resources," within an area affected by the federal agency action. 44 C.F.R. § 10.8(d)(3)(v).

41. For each proposal that is determined to be categorically excluded, FEMA must prepare and maintain an administrative record. 44 C.F.R. § 10.5(a)(4).

42. FEMA's decision to promulgate a final rule, establishing BFEs and modified BFEs for the District, will cause significant and reasonably foreseeable direct, indirect, and

cumulative environmental and related economic impacts on the environment, including those that will result in an extensive change in land use, a land use change which is incompatible with the existing or planned use of the surrounding area, an impact that is likely to be controversial, and an affect on property listed on the National Register of Historic Places. Thus, NEPA is applicable to FEMA's actions set forth herein and no categorical exclusions from NEPA were applicable.

43. FEMA violated NEPA and the Administrative Procedure Act ("APA") by one of more of the following: failing to prepare an EA; failing to prepare an EIS; and apparently deciding that the Final Rule is categorically excluded from the requirements of NEPA. Such decision making was arbitrary and capricious, unsupported by substantial evidence, an abuse of discretion, and otherwise not in accordance with law, and in violation of NEPA and the APA.

## COUNT IV
### Violation of the Endangered Species Act, 16 U.S.C. § 1531 and Administrative Procedure Act, 5 U.S.C. § 551

44. The District incorporates by reference the allegations contained in paragraphs 1 through 25.

45. The purpose of the Endangered Species Act ("ESA") is to protect and recover threatened and endangered species and the ecosystems on which they depend. To that end, Section 7 of the ESA prohibits federal agencies from taking any actions that are likely to jeopardize the survival and recovery of a listed species or adversely modify its critical habitat.

46. The ESA applies to all actions in which there is discretionary Federal involvement or control, including, upon information and belief, the actions of FEMA set forth herein.

47. To assist federal agencies in fulfilling this duty to avoid jeopardy, consultation with the Secretary is required for proposed agency actions that may affect a listed species, including but not limited to the Hay's Spring Amphipod. Such proposed agency actions that may affect a listed species include FEMA's ongoing implementation of the NFIP. Accordingly, the formal consultation requirements under Section 7 of the ESA were necessary. Despite this, upon information and belief, no such consultation occurred with respect to FEMA's actions set forth herein.

48. Endangered and/or threatened species are known to occur in the District of Columbia and, upon information and belief, such species may be impacted by FEMA's actions set forth herein.

49. If FEMA did not initiate consultation under the ESA with the Secretary, its failure to do so would be arbitrary, capricious, an abuse of discretion and not otherwise in accordance with law and in violation of ESA and the APA.

### COUNT V
### Declaratory Relief under 28 U.S.C. § 2201
### Violation of Administrative Procedure Act, 5 U.S.C. § 551
### Rescission of Letter of Final Determination

50. The District incorporates by reference the allegations contained in paragraphs 1 through 26.

51. In the Milestone Agreement, FEMA agreed that its March 26, 2008, Letter of Final Determination would be rescinded upon delivery in May 2008 by the District of a "Copy of Executed Contract for Levee Accreditation Alternatives."

52. On May 14, 2008, the District fulfilled its May 2008 obligations in accordance with the Milestone Agreement by providing a copy of an executed contract for levee accreditation alternatives.

53. In accordance with the Milestone Agreement, this Court should declare that the May 26, 2008, Letter of Final Determination was effectively rescinded by FEMA effective as of May 14, 2008, and that the Letter was arbitrary and capricious, contrary to law, unsupported by substantial evidence and otherwise an abuse of discretion.

**PRAYER FOR RELIEF**

WHEREFORE, the District respectfully requests that the Court issue a declaratory judgment under 28 U.S.C. § 2201, that FEMA's Final Rule of Final Flood Elevation Determinations for the District published in the Federal Register on April 17, 2008 ("Final Rule"), was and is rescinded by FEMA and therefore is of no legal force or effect. In the alternative, the District requests that this Court:

A. Vacate and rescind FEMA's Final Rule and remand it to FEMA for further rule making;

B. Issue a declaratory judgment under 28 U.S.C. § 2201, that FEMA's Final Rule is a major federal action that may have a significant impact on the human environment;

C. Issue a declaratory judgment under 28 U.S.C. § 2201, that FEMA's Final Rule violated and is violating NEPA and the APA;

D. Issue a declaratory judgment under 28 U.S.C. § 2201, that FEMA has violated the ESA and APA by failing to consult with the Secretary to ensure that its Final Rule does not jeopardize listed species within the district;

E. Order FEMA to prepare a full EIS for any decision establishing Base Flood Elevations or modified Base Flood Elevations for the District of Columbia;

F.  Order FEMA to consult with the Secretary prior to any decision establishing Base Flood Elevations or modified Base Flood Elevations for the District of Columbia; and

G.  Grant such further, other, or different relief as the District may hereinafter request or as the Court may find just and equitable.

Dated: June 16, 2008

                                      Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the
District of Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

_____
BERNICE I. CORMAN*
General Counsel
District Department of the Environment
51 N Street, N.E., 6th Floor
Washington, D.C. 20002
Telephone Number: (202) 535-1951
Facsimile: (202) 535-2881
Bicky.Corman@dc.gov

Attorneys for the District of Columbia

* DC Bar Application pending. Member of Massachusetts Bar in good standing. Authorized by the Office of the Attorney General for the District of Columbia to provide legal services pursuant to Rules of the United States District Court for the District of Columbia Local Rules 83.2(d) and 83.2(e).

# EXHIBIT A

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
EXECUTIVE OFFICE
WASHINGTON, D.C. 20001



April 25, 2008

Vice Admiral Harvey E. Johnson, Jr.
Deputy Administrator and Chief Operating Officer
Federal Emergency Management Agency
500 C Street S.W.
Washington, D.C. 20472

Dear Vice Admiral Johnson:

In follow-up to our request and your approval to proceed, we began a collaborative effort with your appointed staff to develop an approach to provide flood protection and risk abatement for the floodplain of the District of Columbia. I am pleased to report to you that we have reached mutual agreement upon a schedule and set of milestones, outlined in the enclosed documents, that we believe will achieve the necessary flood protection.

This letter memorializes our mutual agreement to enter into a process to construct, by no later than November 2009, an interim solution and temporary closure structure (which moves toward a permanent closure structure) and is accreditable by the U.S. Army Corps of Engineers to provide 1% annual chance flood protection as outlined in the enclosed accelerated timeline and schedule of milestones.

Our agreement affirms that we shall observe the enclosed Notification Schedule, so that in the event that issues arise that impact our ability to meet a specific deadline, we can quickly work together to put in place actions that will ensure that our interests and investments in flood risk abatement in the District can still be protected and continue to advance.

As part of this agreement, the District affirms that it has $2.5 million in funds available for this endeavor and that it is prepared to immediately execute the work order that commences the engineering investigations.

We further affirm that we shall continue to work closely with National Parks Service, National Capital Planning Commission, and the Commission on Fine Arts to ensure an expedited review process for this interim and temporary levee closure solution.

We understand that, if a milestone is missed, while we will work together to determine if it is recoverable in time to still reach the November 2009 completion goal, FEMA may

finalize the maps as drafted today with a plan to revise them as soon after completion of the interim solution as possible.

We very much appreciate the dedication of time, effort and good will that all parties brought to the table, particularly your FEMA staff, but also the National Park Service, the National Capital Planning Commission and the U.S. Army Corps of Engineers. I trust that you will find this accord to be agreeable. I am requesting that you indicate your agreement by a return letter and affirm the outcome of this negotiating process.

I would like to underscore my appreciation of your consideration of our unique circumstances and your willingness to pursue alternative means of attaining the ultimate outcome that this FEMA mapping effort is intended to achieve – a reduction of health and safety risk to the citizens, businesses, structures and institutions in the District.

Sincerely,

Dan Tangherlini
City Administrator

Enclosures

Cc: The Honorable Eleanor Holmes Norton

## FEMA/DC Mitigation Notification Schedule

*According to the schedule below, the District will deliver to FEMA the following\*:*

| | |
|---|---|
| April 2008 | Letter of Agreement from City Administrator Dan Tangherlini; Draft scope of work and timeline for Levee Accreditation Alternatives |
| May 2008 | Copy of Executed Contract for Levee Accreditation Alternatives |
| June 2008 | Proactive plan for floodplain management ordinance update for adoption by DC Council that meets, but preferably exceeds minimum National Flood Insurance Program requirements. |
| July 2008 | Public notification plan for residents and businesses in affected areas. |
| August 2008 | General summary of all major planned and ongoing development in the affected area. |
| September 2008 | Datasets from completed Freeboard Analysis for existing levee including preliminary interior drainage modeling for a 1% annual chance rainfall event assuming the closure is in place |
| October 2008 | Concept design plans for various closure alternatives |
| November 2008 | Preliminary engineering calculations to support recommended closure alternative |
| December 2008 | Final draft design plans (50% or 75%) for recommended closure alternative |
| January 2009 | Final design plans with response to comments on previous submissions and submission of Conditional Letter of Map Revision |
| February 2009 | USACE approval letter & project groundbreaking |
| March 2009 | Construction completion milestone (TBD in December 2008) |
| April 2009 | Construction completion milestone (TBD in December 2008) |
| May 2009 | Construction completion milestone (TBD in December 2008, but expected to be equal to or greater than 50%) |
| June 2009 | Construction completion milestone (TBD in December 2008) |

| | |
|---|---|
| July 2009 | Construction completion milestone (TBD in December 2008) |
| August 2009 | Construction completion milestone (TBD in December 2008, but expected to be equal to or greater than 80%) |
| September 2009 | Construction completion milestone (TBD in December 2008) |
| October 2009 | Construction completion milestone (TBD in December 2008) |
| November 2009 | 100% of Construction complete |
| December 2009 | Copy of US Army Corps of Engineers Inspection Letter for system with a minimally acceptable rating or better, certification the levee is designed and constructed to provide 1% protection, and submission of as-built Letter of Map Revision including all required elements for Levee Certification. FEMA Issues Letter of Final Determination for map to become effective in 6 months |

*Note: All relevant datasets produced in the preparation of the design plans will be delivered to FEMA.*

*According to the schedule below, FEMA will to the District deliver the following:*

| | |
|---|---|
| April 2008 | Letter of Agreement signed by FEMA |
| May 2008 | Upon completion of the May milestone, FEMA will rescind the March 25, 2008 Letter of Final Determination |
| December 2009 | Letter of final determination setting effective date of June 2010 |
| March 2010 | Notice of Adoption of the Revised (Post-Levee Certification) Flood Rate Insurance Maps |

*Note: At any point, should FEMA determine the project is not likely to be completed by November 2009, FEMA will immediately issue a Letter of Final Determination, setting a map effective date 6 months from its issuance. The map will include any pertinent improvements to the hazard data. This final determination will not later be rescinded for any reason. However, FEMA will continue to work in partnership with the District to ensure a timely update to the maps once the project is completed.*

EXHIBIT B

EXHIBIT B



*Office of the Administrator*
U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

May 1, 2008

Dan Tangherlini
City Administrator
District of Columbia
1350 Pennsylvania Avenue, NW
Suite 521
Washington, DC 20004

Dear Mr. Tangherlini:

Thank you for your letter dated April 25, 2008. I am pleased that agreement has been reached on this important matter in such a relatively short time. I want to affirm that FEMA will observe the schedule you enclosed in your letter. In addition, should issues arise that may impact delivery of the milestones, FEMA will work with the District to ensure that we reach our mutual goal – a reduction in flood vulnerability, including the eventual establishment of a permanent barrier.

The FEMA Region III staff will be the primary point of contact for oversight of the project schedule and milestones. During this process, FEMA Headquarters will also provide assistance.

I encourage you to continue to work with your Federal partners at the National Park Service, National Capital Planning Commission, and the Commission on Fine Arts to ensure an expedited review process for this interim and temporary levee closure solution.

I also appreciate your understanding that if at any time it is determined the project is not likely to be completed by November 2009, FEMA will immediately issue a Letter of Final Determination which will set a map effective date six months from the issuance. While the finalized map will include any pertinent improvements to the hazard data, the FEMA final determination will not be rescinded at a later date except pursuant to the process established at 44 CFR Part 65.

Sincerely,

Harvey E. Johnson, Jr.
Deputy Administrator and Chief Operating Officer

cc: Representative Eleanor Holmes Norton

www.fema.gov


# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
District of Columbia

## DEFENDANTS
Federal Emergency Management Agency

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Office of the General Counsel
51 N Street, N.E., 6th Floor
Washington, DC 20002
(202) 535-1951

ATTORNEYS (IF KNOWN)
Office of General Counsel
500 C Street S.W.
Washington, DC 20472

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ● C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

⦿ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. § 2201 Declaratory Judgment; 42 U.S.C. § 4104 Flood Disaster Protection Act; appeal from FEMA Final Rule.

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐
DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☐

## VIII. RELATED CASE(S) IF ANY
(See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE June 16, 2008   SIGNATURE OF ATTORNEY OF RECORD  /s/

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.